**BURROUGHS WELLCOME & CO. (U. S. A.), Inc., v. ELI LILLY & CO.**

**No. 341.**

Circuit Court of Appeals, Second Circuit.

Aug. 17, 1945.

Hauff & Warland, of New York City (William E. Warland, Harry Lea Dodson, and William F. Weber, all of New York City, of counsel), for plaintiff-appellant.

Maxwell Barus, of New York City (Maxwell Barus, of New York City, George B. Schley, of Indianapolis, Ind., and Frank M. Nolan, of New York City, of counsel), for defendant-appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The issues on this appeal are whether claim 2 of the plaintiff's United States Patent No. 2,161,198, granted to it on June 6, 1939, as the assignee of Laszlo Reiner, the applicant, for an "Insulin Preparation" is valid and, if valid, whether it has been infringed by the defendant.

Insulin was discovered by Banting and his fellow workers in 1922. In about a year standard insulin, as later adopted by the United States Pharmacopoeia, which will herein be called insulin, became adequately available for use in the control of diabetes with a resulting marked improvement in the condition of sufferers from that disease. Such insulin need not be described for present purposes further than to say that it is an acid protein sold in a clear solution which cannot be administered orally and is usually injected subcutaneously. It supplements the natural secretions which enable the normal person to digest carbohydrates without having an excessive amount of sugar accumulate in the blood stream, and during the period of its activity proper dosage brings about a sufficiently close approximation to normal conditions to obviate danger and much discomfort from the disease.

Insulin, however, has serious disadvantages, except in emergency use, since its onset is comparatively quick and its effect of comparatively short duration, usually reaching its peak in from three to four hours and becoming practically inactive after four to six hours. The injections have to be repeated at what are often inconveniently close intervals and frequent punctures of the skin are thus made necessary.

Much time and thought have been devoted to the search for a compound with insulin as a base whose effect would be somewhat, though not unduly, delayed after the injection was made and whose effect would be prolonged. In 1935 a Dane named Hagedorn found that insulin could be combined with protamine, a basic protein, to form a solution which would have a reasonably delayed onset and have its activity prolonged throughout a period of about twenty-four hours. In January 1936 he published an article setting forth this discovery. The delayed onset and prolonged action properties of this solution could be adjusted by varying the proportion of insulin to basic protein to suit more nearly the needs of individual patients, and the prolongation could also be effected by choosing a basic protein that would form less soluble precipitates. Hagedorn said in his article, "In order to realize this idea different groups of substances have been tried; kyrin, histones, globines and protamines, but only the last mentioned group have given such solubility results that a clinical experiment has been found justified."

The action of the insulin varies, up to the point of its exhaustion, according to the rate of its dissemination after injection into the body. This rate depends, as Hagedorn made clear, upon the relative insolubility of the insulin compound compared to that of insulin alone, at the pH[1] value of the body tissues. He pointed out that preparations of insulin could be given varying rates of onset and duration of activity by combining insulin with

---

[1] The pH value of a solution is the measure of its degree of acidity or of bascity.

other proteins which had a more basic (less acid) isoelectric zone[2] than insulin itself. When this was done the acidity of the insulin was modified by the bascity of the other protein in the precipitate; and the compound, being less soluble than insulin at the pH of the body tissues, would be absorbed more slowly and the effect of the insulin in it would be correspondingly lasting.

Hagedorn filed his application for a United States Patent for a "Therapeutic Product and Process" on February 14, 1936, and Patent No. 2,076,082 was granted to him on April 6, 1937, covering his preparation of insulin and protamine.

In March 1936 Bischoff applied for a patent for an "Insulin Preparation" and disclosed in his specifications that prolonged activity and a consequent reduction in the number of necessary injections could be obtained by the addition of a histone to insulin as the precipitant. He published articles on his work in March 1936, and in an article appearing in September 1936 he said that "the histones, being well known as protein precipitants, presented themselves as more or less obvious possibilities." He mentioned thymus histone in his specifications and described the results of tests made with that preparation and also said that "Similar results were obtained with the histone from chicken blood cells." It is not clear, however, whether the last mentioned histone was from the hemoglobin of the blood. This application was granted and the patent issued as No. 2,121,900 on June 28, 1938. Though that was after the date of the application for the patent in suit, the disclosure, if made before the plaintiff's date of invention, is competent evidence so far as it is relevant on the question of priority of invention regardless of what he claimed. Messler v. United States Rubber Company, 2 Cir., 148 F.2d 734; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651. The plaintiff has made no attempt to carry his date of invention back of the date of his application and the Bischoff disclosure was before that.

Scott and Fisher combined protamine insulin with zinc, obtained an improved product and in 1936 published a description of what they had done. This preparation was given a wide clinical test in this country during that year and early in the next. They were granted American patents which were assigned to Toronto University, and the defendant became a non-exclusive licensee for the United States under them. It put this preparation on sale in commercial quantities in this country on February 1, 1937.

On the same day Reiner applied for the patent in suit on an "Insulin Preparation" made to overcome the disadvantages inherent in the use of insulin alone by combining insulin with globin or with globin and zinc. He said in his specifications:

"In accordance with the present invention, I have found that quick acting and prolonged lowering of the blood sugar content can be obtained by combining the insulin with globin, the animal protein occurring in hemoglobin, to form labile compounds or compositions from which the insulin is slowly released.

"Human globin is preferred, although globin from other sources, such as ox globin or rabbit globin may be used. The insulin and globin are mixed in proportions adapted to produce the most beneficial results and are used in the form of a precipitate in a suitable electrolyte. The rate of activity of the insulin can be controlled by varying the ratio of globin and insulin and the pH value of the electrolyte, the higher proportion of insulin being adapted to produce a quicker action and vice versa. The pH value is made such that the dissociation or decomposition of the composition and the release of the insulin takes place at the desired rate.

"In some instances zinc may be combined with the insulin-globin composition to increase the activity of the insulin and to assist in producing the desired combination between the insulin and globin."

He disclosed his method for making the preparation by dissolving insulin in a dilute acid and the globin in a weak, dilute acid with or without the use of a buffer and then mixing the two to form a clear solution. To that he added a weak base "to increase the pH value of the electrolyte to the point at which precipitation takes place" and he stated that "This solution

---

[2] The isoelectric zone means the pH values close to either side of the isoelectric point which is the pH value at which a dissolved protein has no electric charge at all. It then is neutral, acting neither as an acid nor as a base, and is usually the least soluble.

containing the white precipitate may be used as such or it may be diluted with water or by solution of a zinc salt, and/or cresol."

This application was granted and the patent issued June 6, 1939, to the plaintiff as already stated. Claim 2 is the only one on which the plaintiff relies and it reads, "A therapeutically active product comprising globin insulinate and zinc." The trial court held that the claim was invalid for lack of the disclosure of any invention and dismissed the complaint.

■■ At the trial there was much evidence as to whether or not the patented globin-insulin preparation was useful in the control of diabetes, but the court found that it was and the evidence amply supported that finding. It was also shown that in the clear solution the preparation might be mistaken by the lay purchaser for insulin alone and harmfully used when standard insulin was needed. Yet that danger, if real, but shows the need for regulated sale of it and does not negative its utility, which must be taken as established for the purposes of this appeal.

Though the needed usefulness of the patented preparation was shown, we agree with the trial court that no invention was disclosed. Shortly before the claimed invention several men had reached solutions of the problem, in so far as it has presently been shown to have been solved, which accomplished substantially the same result in substantially the same way, viz., mixing the acid protein insulin with a basic protein like the histones and protamines and adding zinc if desired. The record shows some difference of opinion as to whether or not globin is properly to be classified as a histone but we have no occasion to resolve that dispute. There was evidence that it was often considered to be within the histone group, and one experimenting with knowledge of what Bischoff had published would naturally turn to globin as a possible basic protein precipitant of insulin. Hagedorn had done that. To be sure, he mentioned kyrin, histones and globin in connection with protamines in a manner somewhat discouraging the use of any of them but protamines to secure clinically justifiable results. Yet this record fairly shows that to those skilled in the art it was, after the 1936 publications of Hagedorn and Bischoff, as Oncley testified, "quite obvious that globin would

form a more soluble composition with insulin than these other things. And if you desired a more soluble compound it could be obtained by a combination of globin with insulin." In other words, if a compound was wanted which would have quicker activity after injection globin might be used to prepare it. As Walden testified when his attention was called to Bischoff's article on histones, "Well, I would think after reading that that Hagedorn's conclusions probably were correct since, as shown by Bischoff, the histone preparations did give a somewhat longer action than regular insulin and did give a prolonged action. I also think it would probably suggest that one would obviously want to try globin again, if one wanted a type of intermediate action. If one wanted a type of intermediate action then globin would be probably one of the things that would do it as indicated by Hagedorn in his original work on solubilities. I think that points the direction that one would experiment."

■■ In cases like this, judges sit not as scientific experts on the subject matter of the patent but as the weighers of evidence. This evidence by such experts supports the finding below that "The Reiner patent lacks novelty and invention." How to make an insulin-globin compound, with or without the addition of zinc, was known and the will to make it was the contribution of Reiner. What was questionable was only whether such a preparation would have enough therapeutic value, all things considered, to be a worth-while addition to similar remedies already available for the control of diabetes. He resolved that question in favor of making the preparation, but that did not lay the doubt which had kept others from so doing, as this record shows. He solved no problem in making his preparation and contributed nothing by way of invention to the knowledge already possessed and published by those skilled in the art. Consequently there is no consideration for the grant of the patent in suit, and others are now as free as they were before to use globin as a basic protein in an insulin preparation for medicinal use. Sinclair & Carroll Co. v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143; Universal Oil Products Co. v. Globe Oil & Refining Co., 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399; Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

As the judgment must be affirmed on the above ground, nothing will be said as to infringement except that the defendant made for clinical testing and supplied to physicians free of charge an insulin-globin-zinc preparation which was apparently within the broad claim in suit.

Judgment affirmed.